GEORGE HOYT, *Ex'r, versus* SAMUEL W. BRADLEY.

'The conveyance of land, subject to a mortgage, made by a former owner on condition that certain personal services should be performed by the mortgagor, is a sufficient consideration for a note given for the purchase money.

Damages may be recovered, for non-performance of personal services, as well as for the neglect of performance of services to be performed by others.

To make a statement of what was contained, in a deed of conveyance, and express an opinion of its effect, furnishes no proof that the person so making them, knowingly made such representations, as would make him liable to an action.

THIS case came before the Court, on the following report of the presiding Judge.

" This was an action of assumpsit, on note, given to George Hoyt, deceased, signed by the defendant, dated Dec. 1, 1842, for $220 and interest, payable on demand and interest. The signature of the note is admitted.

" The defendant introduced the copy of a mortgage deed from Eli Hoyt, the son of George Hoyt, the payee of the note, dated March 25, 1840, to Nathaniel Allen, which was

Hoyt v. Bradley.

acknowledged on the same day, and recorded Dec. 4, 1840, which is to be copied, and made part of the case. He also introduced a quitclaim deed from Eli Hoyt to Moses Gilman, dated the first day of April, A. D. 1841, and acknowledged the third day of the same month, of the same premises; and also a quitclaim deed from said Gilman to the defendant, of the same premises, dated Nov. 14, 1842, and acknowledged the same day.

" The defendant then introduced Moses Gilman, who was objected to by the plaintiff, and admitted by the Court, who said that the note in suit, was given in part consideration for the premises conveyed by him to the defendant, and was given to the plaintiff's testator, to take up a note of the same amount, which he, Gilman, had given for the land, to Eli Hoyt. After the witness had made the bargain, and the deed had been drawn, and he thinks, signed by him, he and Bradley went to the payee, George Hoyt, and asked him, if he would take the defendant's note and give up his, the witness', which he held against him ; he replied, that he would. Bradley then asked Hoyt, how the writings were between Eli Hoyt and Allen. Hoyt said that the writings were made, so that Eli was to maintain Allen and his wife, or cause it to be done, and that Eli had a good right to convey, and so had he, Gilman, of course. Hoyt said he was present when the writings were made, and that it was made so at his suggestion. I then gave Bradley the deed and he executed the notes, one of which is the note in suit.

" The note taken up, was one given by me to Eli Hoyt, for the place. Hoyt, the payee, told me at the same time, that he had advised the defendant to buy the place, and that it would be a good chance for him. He said Bradley would hold the place, and Mr. Allen could not. Witness remained on the place till the last of March, 1843, when Bradley took possession and remained there about one month, and then left. Allen had previously brought an action against me for the land. The action was pending, when I sold to the defendant, and he was apprized of it. After the action was brought, I talked

with George Hoyt, the payee, who said he was present when the deed was made, and that Eli was to maintain Allen and his wife, or cause it to be done. I told Bradley what Hoyt said, and Bradley, at my request, went to see Hoyt, before the writings were made. Hoyt knew at the time that the action against me was pending. Allen recovered judgment against me, and turned me off. The judgment was recovered at August Term, 1843, I think. I employed H. W. Paine as counsel, who advised me to quit the place, as I had no defence to the action, and it was defaulted. On cross examination, witness stated that James Chapman did the writings between him and Bradley. Allen was living with me, at the time the action was brought, and lived with me about two years in the whole. Allen witnessed the deed from Eli Hoyt to me; he, the witness, said he then supposed Eli had a right to convey, but afterwards learned to the contrary. I don't recollect, whether the note given up, when the defendant's note was given, was payable to order or bearer; it was not quite due when taken up. The defendant introduced Timothy C. Bradley, who testified that a day or two before the defendant, his brother, closed the bargain with Gilman, he and the defendant, who was in search of a farm, were present with the intestate, and he asked the defendant why he did not buy Gilman out, as he thought it a good bargain. The defendant replied, he would, if Gilman had a good title; the payee, Hoyt, then said, there would be no difficulty about the title, he considered the title good; he said that at the time of the writings being made between Eli Hoyt and Allen, Eli requested him to be present, that when he got there, the writings were made out, he had them read over, and they were accordingly read; he told them they were not right, and that it should be put in, that Eli has to maintain them or cause it to done, and Chapman sat down and put it in. *Cross examined.* — Said, I told my brother, if he did not go and buy it, I should. Mr. Hoyt said, if they had traded, they could exchange notes, or there would be no difficulty. Mr. Hoyt did not say, that he read the deed, or heard it read, after Chapman sat down to put *it* in. George

Hoyt said he supposed it was in. I understood from him, that he knew the words were in. The judgment of Allen against Gilman and execution, and any papers connected with that suit, may be used by either party, but need not be copied. It is agreed, that the Court may draw the same inferences that a jury might, and enter such judgment, either by nonsuit or default, as in their opinion the law and evidence will justify."

"Ezekiel Whitman, the justice presiding, &c."

The only copy of papers refered to in the report, was of the mortgage deed. A copy of the condition thereof, follows.

"Provided nevertheless, and it is to be known, and understood, that if I, the said Eli Hoyt, my heirs, executors or administrators, shall well and properly provide for, maintain and support him, the said Nathaniel Allen and his wife, Betsey Allen, in health and sickness, during the term of both their natural lives, shall at all times furnish them with sufficient and suitable provisions, cooked and prepared, good and comfortable clothing, a convenient and comfortable room wherein is a fire place, and fuel cut and prepared for fire in the same ; and when said Allen shall have become unable to bring fuel and make the fires necessary for his own and wife's comfort, the same shall be constantly done for them ; and in sickness the said Nathaniel and Betsey are to have proper and humane attendance, nursing, medical aid and attendance if necessary, but not to call for any physician farther or beyond Farmington Falls, New Sharon village or Mount Vernon village ; and the said Nathaniel and Betsey are at present to sit at my table with myself and family, and fare in all respects as well as we do, for both meat and drink ; but if said Nathaniel and Betsey, or either of them, shall leave my house, and board elsewhere, I am in that case not to be holden for payment, nor to furnish them with supplies at any place except at my own house, so long as I keep house and provide for them as above mentioned ; and whereas the said Allen has furnished a bed and bedding of their own, it is to be understood that what may remain of said bed and bedding at their decease is to be delivered to said Allen's children, but all additional bedclothes furnished by me,

are to be and remain my property. And it is further agreed and to be known, that the said Nathaniel Allen shall be under no obligation to labor for me, said Hoyt, unless he chooses so to do, and if he should so labor, he is to make no charge for it, it is to be free and with him optional, then the above deed to be void and of no effect."

*J. Baker*, for the plaintiff.

There are two grounds on which it will be contended the defence is established. 1st. Failure of consideration by failure of title. 2d. Fraudulent misrepresentations of the testator.

1st. Then let us inquire if there has been a total failure of title and consideration; for unless the failure is total, it is no defence to this action, as has been decided in *Wentworth* v. *Goodwin*, 21 Maine R. 150, and in *Severance & al.* v. *Whittier*, 24 Maine R. 120.

The title was originally in Eli Hoyt, for the mortgage says, he bought of True Hodgkins. He mortgaged it to N. Allen. The title did not all pass out of Eli by the mortgage. He was still owner of the equity of redemption — still owner of the freehold, so long as he continued to perform the conditions of the mortgage. 4 Kent's Com. 159, 160, 161; 1st Hilliard's Ab't, 276, 284; *Blaney* v. *Bearce*, 2 Maine R. 132. While, according to these authorities, Allen had only a chattel interest.

There was then sufficient interest in Eli, to constitute a good consideration for the note. The only ground then, upon which this branch of the defence can prevail, is, that such were the peculiar circumstances of this case, that Eli's deed would not *convey* this interest — that it was forever bound up in him — that the transactions between Eli and Allen operated as a perpetual covenant of inalienation.

Let us then examine this point. We answer to this —

1st. No such construction will be favored by the Court. It is against the policy of the law, which is to facilitate, not clog alienation. *Currier* v. *Earle*, 12 Maine R. 216; 4 Kent's Com. 129, 130, 131, 132; 1st Hilliard's Ab't, 250 and 251, sect. 20, 27; *Newton* v. *Reid*, 4 Simon's R. 141; 2 Story's

Eq. Juris. 539; 2 Blackstone's Com. 157; *Clinton* v. *Fly*, 10 Maine R. 292; *Ide* v. *Ide*, 5 Mass. R. 500; *Blackstone Bank* v. *Davis*, 21 Pick. 42; Cruise's Digest, tit. 13, c. 1, sect. 22, 38, 39; *Church* v. *Brown*, 15 Ves. 263.

2d. We deny that any such construction is to be given to these transactions. It can only be on the ground of "*personal trust.*" We deny that there is any such *trust.*

The mortgage itself declares that it may be fulfilled by Eli, his heirs, executors, or administrators, so that the parties did not contemplate a personal trust entirely. No relationship is shown — mere strangers. Not like *Clinton* v. *Fly*, 10 Maine R. 292. There the whole transaction existed in a single contract — the relation of parent and child existed, heirs, executors, or administrators not inserted, and the whole determined on the peculiar relation of the parties. But it is like *Currier* v. *Earle*, cited above.

3d. Even if the *contract* to support Allen, the duty, the obligation, is a personal trust and not assignable, still the mortgage, to secure the performance of that duty, is entirely a distinct and independent contract, and contains no element of personal trust. The duty to support, has nothing to do with the land — need not be performed on the land — he is to render it at his house, wherever that may be, and no where else. Nothing to prevent his moving from the farm or State, and yet so long as he keeps house, and furnishes the support, as agreed, the condition is unbroken. A mortgage is security to something else; collateral, necessarily implies something to be secured. The *contract* might be a *personal trust*, but the *mortgage* would not be. The land would not be bound down, nor Eli's right in it rendered inalienable.

4th. But even if the transaction does create a *personal trust*, and does reach the land, and deprive Eli of the right of alienation, in a certain contingency, we maintain that this restriction does not attach, till a breach of the condition, and an entry and ouster on that account, and that no total failure of consideration can be shown while the grantee is in possession; for Gilman, being in by purchase of the mortgagor, is not

liable to pay rent any more than the mortgagor. 4 Kent's Com. 125 to 128; *Frost* v. *Butler*, 7 Maine R. 225 ; 1st Hilliard's Ab't, 261, sect. 36, and 262, sect. 37 and 40 ; 2 Blackstone's Com. 155 and 156 ; Cruise's Dig. tit. 13, c. 2, sect. 37.

The fact that Allen brought an action for possession is no evidence of a breach.

By Rev. Stat. chap. 125, sect. 2d, an action may be brought before breach, and there is nothing in this case to show that this was for condition broken. 1st. The writ declares an absolute fee. — 2d. Unconditional judgment. — 3d. Nothing to show that the action was brought on this mortgage. *Coleman* v. *Packard*, 16 Mass. R. 39. Now the practice is, where action is brought for condition broken, to declare on the mortgage, and until Rev. Stat. the action could not be sustained without, but where the action was brought for possession merely before breach, to declare on general seizin. *Erskine* v. *Townsend*, 2 Mass. R. 493; *Swan* v. *Wiswell*, 15 Pick. 126 ; *Darling* v. *Chapman*, 14 Mass. R. 104. By Rev. Stat. c. 125, sect. 3, 7, 9, a *conditional* judgment must be rendered in all cases, when an action is brought for condition broken, and no possession gained by action, by sect. 3, can ever bar the right of redemption without a conditional judgment; and if it be not effectual for that purpose, it is not as an entry for forfeiture or condition broken.

But even if this action is evidence of *breach*, there is no evidence of any entry under the judgment.

5th. But even if all these grounds fail us, we still fall back on another, viz : that since the Rev. Stat. there is an equitable right, which will be protected by a court of equity, even in the hands of an assignee, after breach, but before final foreclosure. Rev. Stat. c. 96, sec. 10, and c. 125, sec. 15 and 16. This last provision (sec. 15,) is new, and was not in any of the old statutes.

By these statutes, the Court in equity, would have power to do justice between the parties; to decree, instead of the support, a compensation in money, either in a gross sum or in the shape of an annuity.

The contract required the expenditure of money, and required nothing that money would not procure, for no relationship or affection appears in the case, and a compensation will answer as well as a specific performance; and in all such cases equity will interfere to save a forfeiture. *Frost* v. *Butler*, 7 Maine R. 225; *Wilder* v. *Whittemore*, 15 Mass. R. 262; *Fiske* v. *Fiske*, 20 Pick. R. 499; 1 Story's Eq. 106, 110, 452; 2 Story's Eq. 545, 546; *Farwell* v. *Jacobs*, 4 Mass. R. 634; *Saunders* v. *Pope*, 12 Vesey's R. 282; *Davis* v. *West*, 12 Vesey's R. 475; *Skinner* v. *White*, 17 Johns. R. 357; Cruise's Dig. tit. 13, c. 2, sect. 29 to 37.

6th. Even if all right fails, both legal and equitable, we maintain that the defence must fail, because the actual possession, even without right, is a sufficient consideration — it is not a total failure. *Morgridge* v. *Jones*, 14 East's R. 484; *Freligh* v. *Platt*, 5 Conn. R. 494; *Gascoyne* v. *Smith*, 1 McLellan & Young's R. 338; *Greenleaf* v. *Cooke*, 2 Wheaton, 13; *Severance & al.* v. *Whittier*, 24 Maine R. 120.

But if this note is to be considered given for the land directly, we maintain there is sufficient consideration. Gilman had *actual* seizin and transmitted it to Bradley; and he still holds the deed of the land; has never offered to rescind the bargain, and even if Allen be in possession, Bradley is *substantially* receiving the rents and profits, for they go to diminish his liability to Allen "*pro tanto*." If the rents and profits are sufficient for Allen's support, then is the mortgage fulfilled — no breach has taken place, and if Allen and wife so continue till their death, the *whole estate* will go to Bradley, and not to Allen's heirs. If the rents and profits are not sufficient for their support according to contract, then Allen's estate, or his legal representatives would have a legal claim against Bradley for the balance. How much the farm may be worth, more than the incumbrance, the Court cannot say, neither can it say it would be worth *nothing*.

The second ground of defence probably will be the false representations of Hoyt about the writings.

To this we answer: — 1. If there has been any such false

representations, as entitle this defendant to damages, they are not available in defence of this note, but must be sought by an action on the case, against the deceiver.

2. But we deny that any false representations were made.

3. But even if these statements were not all true, they were not fraudulently made ; for they must be false and fraudulent, to constitute a defence. *Dennison* v. *Mutual Ins. Co.* 20 Maine R. 125 ; *Page* v. *Bent*, 2 Metc. R. 371 ; 1 Story's Eq. 101 ; 2 Kent's Com. 485 — 490 ; *McDonald* v. *Trafton*, 15 Maine R. 225 ; *Bean* v. *Herrick*, 12 Maine R. 262, and cases cited. *Shrewsby* v. *Blount*, 2 Manning & Granger, 475 ; *Starr* v. *Bennett*, 5 Hill's N. Y. R. 303.

*Bronson* argued for the defendant, contending :—

That the grantor had no assignable interest in the land described in the deed, for which the note in suit was given, and that therefore, it was without consideration. The duties to be performed were wholly of a personal character, to be performed by Eli Hoyt alone, or by his heirs, executors, or administrators. The conveyance operated as a forfeiture of the estate.

There can be no conditional judgment entered on account of the non-performance of the conditions of this mortgage. The performance was to have been made entirely by Hoyt, and as personal to him alone. The deed gave the defendant no benefit whatever.

The defendant was induced to make the purchase solely by means of the false and fraudulent representations of the payee of the note.

No benefit was derived by the defendant on account of his remaining in possession for a short time, for he was bound to pay the rent during that time to Allen. 5 N. H. Rep. 341.

The opinion of the Court was announced orally, at the same term of the argument, by

SHEPLEY J. — After stating the facts, it was remarked in substance. 1. The counsel for the defendant contends, that nothing passed by Gilman's deed to him, and that the note,

therefore, is without consideration. But he took the estate subject only to the mortgage. If Allen and his wife had both deceased soon after the deed to the defendant, he would have held the land, subject only to the payment of damages for non-performance of the condition of the mortgage to Allen. There is no evidence, that the estate conveyed to the defendant is not a valuable one, although subject to Allen's mortgage.

It is also said, that there can be no conditional judgment for non-performance of duties of a personal character. But damages may be recovered for non-performance of personal services, as well as for services to be performed by others. It may prove, that the whole farm may be required for the support of Allen and wife; and on the other hand, it may or might have happened, that the purchase was a good speculation. The defendant took the estate subject to that contingency.

It is further contended, that the defendant was induced to make the purchase, by the misrepresentations of the payee of the note. It does not seem, however, that he did any thing more, than to give an account of what was contained in the deed of conveyance, and to express his opinion of its effect. This is no proof that he knowingly made such representations, as to make himself liable. The defendant knew, that there was a difficulty between Gilman and Allen, and that there was a suit pending. That should have put him on his guard, and was sufficient to warn him not to trust to opinions of such as were friendly to one side of the question.

*The defendant must be defaulted.*